# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

TRAVELERS CASUALTY    )
AND SURETY COMPANY,   )
             )
      Plaintiff,   )
             )
   v.        )   3:09 CV 501 PPS
             )
WELLS FARGO BANK, NA;   )
HOLCO CAPITAL GROUP, INC.;  )
HC MORTGAGE COMPANY, INC; and )
KEVIN C. HORTON,    )
             )
      Defendants.  )

## OPINION AND ORDER

Travelers Casualty and Surety Company seeks a temporary restraining order and preliminary injunction freezing the assets of Defendants Holco Capital Group, Inc. and Kevin Horton to prevent dissipation of more than $2.4 million that it claims it is owed pursuant to a trust agreement between the parties. (DE 12.) Travelers also moves the Court for an order compelling Defendants to deposit funds necessary to satisfy this debt into the Court's registry pending resolution of this dispute, because of danger that these funds will be depleted by the time the action is resolved. (DE 10.) While there is evidence Travelers eventually may succeed on the merits, because Travelers has an adequate remedy at law, it will not be irreparably harmed absent an injunction, and the balance of equities weighs against an injunction, Travelers' motions are denied.

## BACKGROUND

In 1969, the Ford Foundation loaned $16,101,000 to Kukui Gardens Corporation ("Kukui") for the purpose of constructing a low-income housing development in Hawaii. (DE 1

¶ 17.)  The loan was secured by a mortgage on the property.  (*Id.*)  The United States Department

of Housing and Urban Development ("HUD") insured the note that Kukui gave the Ford

Foundation pursuant to the mortgage loan.  (*Id.* at ¶ 18.)  In addition to the monthly mortgage

payments, as a condition of the HUD insurance, Kukui agreed to make monthly payments into

two reserve funds to be used for property maintenance.  (*Id.* at ¶ 19.)

     HC Mortgage Company, Inc., which was owned and operated by Defendant Horton,

acquired the Kukui note and related mortgage at a HUD-sponsored auction.  (*Id.* at ¶ 21.)   HC

Mortgage then entered into a Trust Agreement with the National Bank of Detroit, and a Project

Loan Certificate ("Certificate") was issued pursuant to that agreement.  (*Id.* at ¶¶ 20-22.)  The

Trust Agreement grants the Certificate's holder a beneficial interest in the Kukui loan and related

mortgage.  (*Id.* at ¶ 24.)  Essentially, it entitles the Certificate's holder to the stream of principal

and interest payments collected under the note.  (*Id.*)

     The Trust Agreement created three offices: Servicer, Mortgage Trustee, and Certificate

holder.  (*Id.* at ¶ 26.)  The Servicer and Mortgage Trustee were to ensure that the Certificate's

holder receives the Kukui mortgage payments.  According to the agreement, the Mortgage

Trustee must hold the Kukui loan and related mortgage in trust on behalf of the Certificate's

holder.  (*Id.* at ¶ 28.)  It also must maintain a Certificate Account on behalf of the Certificate

holder.  (*Id.* at ¶ 29.)  The Servicer must then direct Kukui to make all principal and interest

payments into that account.  (*Id.* at ¶ 30.)  After the payment is made into the account, the

Mortgage Trustee must distribute the proceeds from the Certificate Account to the Certificate

holder on the twentieth day of each month.  (*Id.*). One might wonder how the Servicer and

Mortgage Trustee make any money if all of the principal and interest are paid to the Certificate

holder.  At the hearing, counsel explained that those entities simply made money off the float

between the time that Kukui made its mortgage payment and when the payment was due to the Certificate holder.

Cudd & Co. became the Certificate holder in 1993. (*Id*. at ¶ 36.) According to Travelers, Cudd held the Certificate for the benefit of Travelers, and Travelers was the beneficial owner of the Certificate. (*Id*.) Travelers alleges it paid substantial sums of money to purchase the Certificate's beneficial interest and to acquire the right to receive loan payments, as directed by the Trust Agreement. (*Id*. at ¶ 37.) Also, Cudd assigned all claims it may have under the Certificate and Trust Agreement to Travelers. (*Id*. at ¶ 38.) Pursuant to the Trust Agreement, Cudd received the monthly payments from July 1993 to October 2007 and then passed them along to Travelers. (*Id*. at ¶ 39.)

The Trust Agreement also states that the Certificate's holder will receive the final principal and interest payment – termed "Liquidation Proceeds" – if Kukui elected to repay the loan before the balance was due. (DE 1-2 at 9, 17.) If Kukui repaid the balance early, the Servicer or Mortgage Trustee was to give notice of the termination of the trust and then pay the Certificate holder the final payment. (*Id*. at 40.)

In 1998, Horton created Holco. (DE 1 ¶ 40.) HC Mortgage then assigned to Holco its servicing rights and obligations under the Trust Agreement. (*Id*.) In 2006, Horton and Wells Fargo, the successor Mortgage Trustee to the National Bank of Detroit, agreed to substitute Holco as the Mortgage Trustee.[1] (*Id*. at ¶¶ 40-43.) After Holco became Mortgage Trustee, Wells Fargo transferred the money in the reserve accounts to Horton and Holco. (*Id*. at ¶ 49.) Holco the became the Servicer and Mortgage Trustee and had complete control of the trust under

---

[1] Travelers alleges that this violated the Trust Agreement, however, I need not rule on this issue here.

the Trust Agreement. Travelers alleges that shortly after gaining complete control over the trust, Holco stopped making the required payments of principal and interest to Travelers. Holco made no payments in December 2006, January 2007, and February 2007 and then stopped making payments altogether in November 2007. (*Id*. at ¶ 52.)

Around the time Holco stopped making payments, Kukui entered into an agreement to sell the mortgaged property in exchange for pre-payment of the remaining balance on the note, which was around $1.8 million. (*Id*. at ¶¶ 47-48.) But Kukui and Horton disputed ownership of the nearly $4.5 million in the reserve funds, so Kukui sued Horton and his businesses in federal court in Hawaii. (*Id*. at ¶¶ 49-50.) As part of a settlement in that action, Horton agreed to credit Kukui the $1.8 million out of the funds in the reserve account to satisfy the note. (*Id*. at ¶ 50.)

As a result, the original note was satisfied, and Horton was in possession of the remaining principal and interest payments. (*Id*. at ¶ 50.) Travelers alleges that the Trust Agreement required that money be put in the Certificate Account and then paid to Travelers. But rather than pay the balance, Horton sent Cudd a letter in December 2007 claiming Cudd owed Horton more than $600,000 for costs incurred during the life of the trust. (*Id*. at ¶ 54.) Travelers claims this violated the Trust Agreement. (*Id*.)

Moreover, Travelers alleges that Horton commingled the $1.8 million that should have been put into the Certificate Account with reserve account funds and Holco's other funds. (*Id*. at ¶ 51.) In fact, Horton admitted at his deposition from the Hawaii action that he used the commingled funds to pay off personal and business debts having no relation to the Kukui mortgage. (DE 11-2 at 43, 81.) And the District Court of Hawaii found that Horton misused the reserve funds by commingling them with other funds and ordered Horton to deposit $2.7 million (the balance in the reserve account minus the $1.8 million credit to pay off the mortgage) into

that court's registry because of the risk that Holco and Horton "will continue to deplete the funds if said funds remain in their possession." (DE 11-4 at 6.)

As a result, Travelers brought this action for breach of contract, breach of fiduciary duty, civil and criminal conversion, unjust enrichment, and imposition of a constructive trust. It's entirely unclear why the case was brought in the Northern District of Indiana. Although jurisdiction is proper here (Horton is a citizen of Indiana and there is complete diversity), the case seems better suited for Hawaii. That's where the property is located and the related case is there as well. In any event, Travelers seeks an order from this Court preventing the Defendants from dissipating the $2.4 million in principal and interest that Travelers says it is owed and safeguarding the money until a final judgment on the merits.

## DISCUSSION

A party seeking a preliminary injunction must demonstrate 1) a likelihood of success on the merits; 2) a lack of an adequate remedy at law; and 3) an irreparable harm will result if the injunction is not granted. *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007). But "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 376-77 (2008). So even if the first three elements are established, I must balance the relative harms that could be caused to either party. *Id.* This is done on a sliding scale so that a lesser likelihood of success could be overcome with proof that the balance of harms tips strongly in the plaintiff's favor. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

The likelihood of success analysis only requires me to evaluate "whether the plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *Id.* Travelers alleges that it meets this threshold requirement because Defendants failed to put the

$1.8 million credit into the Certificate Account as the Trust Agreement required.  Moreover,

Travelers claims that Defendants are not entitled to receive compensation under the Trust

Agreement, as Defendants alleged in their December 2007 letter to Cudd until, at the very least,

the final payment was made.  But Defendants argue that Travelers are not entitled to liquidation

proceeds under the Trust Agreement because only Cudd has a right to assert a claim pursuant to

the Certificate.  Also, Defendants claim that Horton's deposition testimony states that he only

commingled reserve account funds, not the $1.8 million in principal and interest at issue here.

Because the likelihood of success standard is "an admittedly low requirement," I find that

Travelers has met its burden.  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of

America, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008).  At the very least, the Trust Agreement is

clear that the Certificate holder must be paid before the Servicer (or Mortgage Trustee for that

matter) can receive any expenses.  Defendants admittedly did not do this following the $1.8

million credit.  Thus, at this early stage in the litigation, I am persuaded that Travelers has more

than a negligible chance of prevailing on the merits.

But Travelers falls short in the adequate remedy at law and irreparable harm elements of

the analysis.  "As a general rule, a defendant's ability to compensate plaintiff in money damages

precludes issuance of a preliminary injunction."  *Signode Corp. v. Weld-Loc Systems, Inc.*, 700

F.2d 1108, 1111 (7th Cir. 1983) (internal quotations omitted).  Indeed, an injunction is an

equitable remedy that courts may grant at their discretion "in the extraordinary situations where

legal remedies such as monetary damages are inadequate."  *Bedrossian v. Northwestern

Memorial Hosp.*, 409 F.3d 840, 842 (7th Cir. 2005); *see also Tilley v. Roberson*, 725 N.E. 2d

150, 154 (Ind. Ct. App. 2000) ("[A] party which suffers only 'mere economic injury' is not

entitled to injunctive relief because an award of post-trial damages is sufficient to make the party

whole."); *J & J Wehner, Inc. v. H & L Plating & Grinding, Inc.*, 2007 WL 1021417, at \*5 (S.D.

Ind. Mar. 30, 2007) ("[P]retrial relief effectively impounding money is – and should be –

extremely rare.").

At bottom, this case is really about the recovery of money. While it is true that Travelers

states claims for equitable relief,[2] this dispute is essentially over identifiable and easily

calculable money damages – namely, $2,432,487.66 – which includes outstanding principal and

interest due under the Trust Agreement. (*See* DE 11-3 at ¶ 6.) This case will likely turn on

whether Defendants breached the relevant agreements. Thus, Travelers' remedy at law is clearly

adequate.

Travelers argues, however, that it will be irreparably harmed if Defendants are not

prevented from dissipating the money Travelers is owed before a final judgment on the merits. It

cites to Horton's deposition in which he states that he has commingled the $1.8 million with

other funds, along with a decision from the District of Hawaii where that court found there was a

substantial risk that Defendants would deplete the reserve funds if the money remained in

Defendants' possession.

In limited circumstances a preliminary injunction is proper where money damages may

be unobtainable because the defendant is dissipating assets and may become insolvent before

entry of final judgment. *See Deckert v. Independence Shares* Corp., 311 U.S. 282, 290 (1940)

---

[2] Because Travelers seeks claims for equitable relief, I have the authority to grant the preliminary injunction. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (finding district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (preliminary injunction freezing assets was proper where party sought a constructive trust in the alternative). Nevertheless, *Grupo's* analysis is instructive. 527 U.S. at 332 (describing a prejudgment injunction of money damages the "nuclear weapon of the law").

(preliminary injunction of money assets proper where defendant "was insolvent and its assets in danger of dissipation or depletion."); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (finding money damages inadequate where defendant may become insolvent); *Tanimura & Antle, Inc., v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 139 (3d Cir. 2000) (finding injunction proper where plaintiffs showed that defendants were dissipating trust assets and would unlikely have funds to satisfy a judgment); *J &J Wehner*, 2007 WL 1021417, at *5 (finding preliminary injunction of money damages only appropriate in "unusual cases"). But Travelers has not met that burden here. While Defendants may have impermissibly commingled funds contrary to the Trust Agreement, Travelers has presented no evidence that Defendants' misuse of funds will lead to its insolvency. Nor has Travelers shown that Defendants are dissipating funds or hiding assets to evade creditors. *See, e.g., MeccaTech, Inc. v. Kiser*, 2008 WL 934366, at *4 (D. Neb. Apr. 1, 2008) (preliminary injunction proper where plaintiff "provided ample evidence that [defendants] . . . have systematically attempted to delay this litigation and hide assets.")

What's more, Travelers has dragged its feet. Travelers seeks immediate relief yet it waited nearly two years to bring this action. As stated above, a preliminary injunction is an extraordinary remedy, especially when the injunction is for monetary damages, and Travelers has the burden of showing why *emergency relief* is necessary. In October 2006, Defendants sent Cudd a letter notifying it of pending liquidation of the Trust Agreement. And Defendants stopped making the principal and interest payments in November 2007. Then in December 2007 Defendants' sent a letter to Cudd stating that Defendants were not only withholding over $1.8 million, but requesting over $600,000 in expenses. This should have alerted Travelers that it was not going to receive its money. While Travelers claims that it tried to intervene in Hawaii, and it

did not know that Horton was commingling funds until September 2009, I question why Travelers did not take more aggressive steps to seek relief at an earlier time.

Finally, the balance of harms favors Defendants. Travelers requests an injunction that would essentially prevent both Defendants Horton and Holco from accessing over $2.4 million worth of assets until the balance is either attached or paid to the Court's registry. First, the proposed language is too broad under Fed. R. Civ. P. 65(d), which requires that preliminary injunctions be detailed and specific. *See* Fed. R. Civ. P. 65(d); *see Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 646 (7th Cir. 2002) ("The purpose [of Rule 65(d)] is to provide a solid foundation for any subsequent efforts to enforce the injunction by contempt proceedings or otherwise.") Nevertheless, even a more narrow injunction, as the one proposed at the TRO hearing, would be unduly burdensome based on the evidence before the Court.

## CONCLUSION

Therefore, though Travelers has shown a greater than negligible chance of prevailing on the merits, because it has an adequate remedy of law, it will not be irreparably harmed absent an injunction, and the balance of harms favors Defendants, Travelers' motion for temporary restraining order and preliminary injunction freezing assets (DE 12) and motion to compel deposit into the Court's registry (DE 10) are hereby **DENIED**.

**SO ORDERED**.

**ENTERED**: December 9, 2009.

 s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT